```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 UNITED STATES OF AMERICA
                                          MEMORANDUM & ORDER
              -against-                   21-CR-111 (EK)

 EDWIN ANTONIO ARGUETA TORRES,

                   Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

      A grand jury in this district indicted Edwin Argueta-Torres for illegal reentry – *i.e.*, for being found in the United States following deportation for an aggravated felony. The "aggravated felony" in question was Argueta's 1999 robbery conviction in Virginia state court. Argueta moves now to dismiss the indictment on the basis that his robbery convictions were not, in fact, aggravated felonies. Def.'s Mot. to Dismiss, ECF No. 20-1 ("Def. Br."). For the reasons that follow, the motion is denied.

## I. Background

      Argueta entered the country in 1995 as a lawful permanent resident. Def.'s Ex. B, ECF No. 20-3, at 5. In 1999, he pleaded guilty in Virginia state court to two counts of robbery. Def.'s Ex. D, ECF No. 20-3, at 10-21. While he was incarcerated, in May 2000, the Immigration and Naturalization Service ("INS") lodged a detainer so that they could deport him

upon release.  Def.'s Ex. E, ECF No. 20-3, at 23.  In May 2001, the INS sent Argueta a Notice to Appear ("NTA") before an immigration judge.  Def.'s Ex. F, ECF No. 20-3, at 25-27.  The NTA provided the address of the hearing but no date or time.  *Id.* (date and time "to be set").  On October 1, 2002, the INS sent Argueta a Notice of Hearing in Removal Proceedings ("Hearing Notice"), which did provide a date and time; it informed Argueta that he would appear by video.  Government's Ex. A at 2, ECF No. 21-1.  Argueta appeared at the deportation hearing as scheduled on October 8, 2002.  Def.'s Ex. H. at 0:35, ECF No. 20-3; *see also* Def. Br. 6-7.

At the hearing, Argueta asked the Immigration Judge if he could depart the country voluntarily instead of being deported.  Hearing Audio, Def.'s Ex. H at 06:36-07:18, ECF No. 20-3.  The Immigration Judge replied that Argueta was ineligible for voluntary departure because his two robbery convictions constituted aggravated felonies under 8 U.S.C. § 1101(a)(43)(F) and (G).  *Id.* at 04:25-06:01.  The government deported Argueta to El Salvador in January 2003.  Def.'s Ex. J, ECF No. 20-3, at 25.

Argueta contends that the Immigration Judge was wrong — that the robbery convictions were not aggravated felonies under Section 1101.  Def. Br. 12.  He says this is because Virginia's definition of robbery subsumes the state's unusually

2

broad conception of aiding-and-abetting liability. *Id.* at 13. Given this broad conception, he argues, Virginia's robbery statute is broader than its "generic" federal analogues — namely, "crimes of violence" under 8 U.S.C. § 1101(a)(43)(F) and "theft offenses" under Subsection (G). Therefore, the defense contends, under the "categorical approach" that the Supreme Court mandates, Argueta's convictions are not aggravated felonies. *See Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (requiring the categorical approach, under which the court asks "whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony").[1]

Argueta's argument matters because the illegal reentry statute pursuant to which Argueta is charged here — 8 U.S.C. § 1326 — provides a path for a defendant to collaterally attack the underlying removal order. Specifically, Argueta can defeat the indictment if he demonstrates, among other things, that the entry of his removal order was "fundamentally unfair" under Section 1326(d)(3). Argueta claims that the Immigration Judge's error regarding his eligibility for voluntary departure worked a fundamental unfairness. Def. Br. 11. And this unfairness

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

3

prejudices him now because voluntary departure is not a basis for a later charge of illegal reentry, unlike a deportation order.  *Id.*  Argueta moves to dismiss the indictment on that basis.

As discussed below, Argueta's argument is ultimately unavailing, despite the cogent and thorough manner in which he makes it.  In the end, Argueta ascribes too much reach to Virginia's concept of aiding and abetting, as indicated by a review of Virginia law itself and as previously determined by the United States Court of Appeals for the Fourth Circuit (applying Virginia law) and the federal district courts of the state.

## II.  Legal Standard

The dismissal of an indictment is an "extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights."  *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001).  A defendant charged with illegal reentry may collaterally attack the removal order underlying the criminal charge only if he meets the requirements of 8 U.S.C. § 1326(d).  Specifically, he must demonstrate that: (1) he has "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) "the deportation proceedings at which the order was issued improperly

4

deprived [him] of the opportunity for judicial review;" and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). Because these three "requirements are conjunctive," a noncitizen must generally "establish all three in order to succeed in his challenge to his removal order." *United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002).[2]

The government argues that Argueta cannot meet the requirements of Section 1326(d) because he cannot satisfy the third – "fundamental unfairness" – prong.

### III. Discussion

**A. Whether Argueta's Proceeding Was Fundamentally Unfair**

To show fundamental unfairness under Section 1326(d)(3), a defendant "must show both a fundamental procedural error and prejudice resulting from that error." *Fernandez-Antonia*, 278 F.3d at 159. Argueta has shown neither.

1. Whether the Immigration Judge Procedurally Erred

The Immigration and Nationality Act ("INA") provides that any "alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C.

---

[2] There is an exception to the rule that a noncitizen must satisfy each requirement: the administrative exhaustion requirement is excused where the waiver an administrative appeal was not knowing and intelligent. *See United States v. Sosa*, 387 F.3d 131, 137 (2d Cir. 2004). The waiver of administrative remedies is not knowing and intelligent where the removal defendant is wrongly informed that he is ineligible for discretionary relief. *United States v. Calderon*, 391 F.3d 370, 375 (2d Cir. 2004). This exception does not affect the outcome here; as discussed below, Argueta was not wrongly informed that he was ineligible for discretionary relief.

5

§ 1227(a)(2)(A)(iii).  A noncitizen who has been convicted of an aggravated felony is ineligible for voluntary departure – as opposed to removal – from the United States.  8 U.S.C. § 1229c(a)(1).  "Aggravated felony" is defined in 8 U.S.C. § 1101(a)(43), which sets forth a long list of offense categories that qualify.  The Immigration Judge concluded that Argueta's robbery convictions fell within two such categories: it was a "crime of violence" under 8 U.S.C. § 101(a)(43)(F), and a "theft offense" under Subsection (43)(G).  Def.'s Ex. H at 4:25-6:01, ECF No. 20-3.  As noted above, Argueta says this was wrong because Virginia's robbery statute – codified at Virginia Code § 18.2-58 — subsumes Virginia's broader-than-generic definition of aiding-and-abetting liability.

To resolve this motion, I must apply the "categorical approach" prescribed in *Taylor v. United States*, 495 U.S. 575, 599-600 (1990), and *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185-187 (2007).  Under that approach, judges trying to decide whether a state conviction meets a generic federal definition must look to the state statute defining the crime of conviction, not the facts of the particular defendant's case.  *Taylor*, 495 U.S. at 600.[3]  The operative question is whether the state crime

of conviction extends the reach of one or more elements "significantly beyond" the reach applied by other states. *Duenas-Alvarez*, 549 U.S. at 193.

Mining at least eighty years' worth of Virginia cases, Argueta argues that Virginia robbery is broader than its "generic" federal equivalent because of the way Virginia defines accomplice liability. He claims that Virginia law imposes aiding-and-abetting liability based on a defendant's "mere presence" and "passive acquiescence" at the scene of a crime. Def. Br. 14-16. This exceeds the already-broad scope of federal aiding-and-abetting liability, Argueta contends, because federal law generally requires something more by way of an *actus reus* — specifically, some degree of active participation, even if that participation manifests solely in the form of

---

[3] As a threshold matter, it is not immediately obvious Argueta is framing the required "categorical" comparison correctly. That comparison, as noted in *Taylor,* 495 U.S. at 599-600, requires me to measure the state "crime of conviction," on the one hand, against its generic federal equivalent, on the other. Argueta was not convicted of aiding and abetting a robbery, *see* Def.'s Ex. D, ECF No. 20-3, at 11, 15, and the Virginia robbery statute itself does not contain an aiding-and-abetting component on its face.

Courts do, however, consider aiding and abetting to be incorporated into the crime of conviction in such circumstances. *See, e.g.*, *United States v. Valdivia-Flores*, 876 F.3d 1201, 1208-09 (9th Cir. 2017). This is true despite the fact that Argueta's position, if correct, would yield the extreme result that no Virginia state crime for which aiding and abetting is possible could ever constitute an aggravated felony. *See id.* (noting this anomaly, but stating that "for good or ill, the elements-based approach remains the law" of categorical analysis). The question is academic here because, as discussed below, there is no categorical mismatch between Virginia aiding-and-abetting liability and its generic federal equivalent, whether or not aiding-and-abetting is subsumed within the state statute at issue.

7

encouragement. Argueta's characterization of Virginia law, however, is not correct.

The Virginia courts have said so explicitly. In *Jones v. Commonwealth*, for example, the Supreme Court of Virginia explained that aiding and abetting – also called being a "principal in the second degree" in Virginia – requires that "there must be something done or said by [the defendant] showing (a) his consent to the felonious purpose and (b) his contribution to its execution." 157 S.E.2d 907, 909 (Va. 1967) (holding that there was insufficient evidence that defendant aided and abetted burglary and attempted robbery where there was "no showing of any overt act by Jones which indicated his participation in the illegal conduct," no "direct evidence that Jones shared the criminal intent" of the principal, and "no evidence . . . that Jones was involved in a plot to burglarize the . . . house"). More recently, in *Byrd v. Johnson*, the state Supreme Court explained:

> A principal in the second degree is a person who is present and *assists by helping in the commission of the crime*. It must be shown that he intended by his word, gestures, signals, or action to encourage, advise, urge, or help the person who actually committed the crime, or he shares a criminal intent of the person who actually committed the crime.

701 S.E.2d 896, 899 (Va. 2011); *see also Hall v. Commonwealth*, 303 S.E.2d 903, 905 (Va. 1983) (dismissing indictment because "the facts . . . establish[ed] no more than mere presence at the

8

scene of a crime"). Thus, in Virginia, as in the federal system, a person who aids and abets must act in some way to provide assistance or support *in addition* to being present.

Argueta acknowledges these clear statements of Virginia law, but argues that I should judge the law of Virginia by its courts' actions rather than their words. He points to the *holdings* of cases like *Foster v. Commonwealth*, 18 S.E.2d 314 (Va. 1942), and *Spruill v. Commonwealth*, No. 3054-01-3, 2002 WL 31655322, at *3 (Va. Ct. App. Nov. 26, 2002). In *Foster*, the precursor to the current Virginia Supreme Court considered a criminal defendant's argument that the evidence was insufficient to sustain his 1941 conviction for aiding and abetting the crime of "keeping a house of ill fame." 18 S.E.2d at 315. The court anchored its analysis in the familiar rule: "Mere presence when a crime is committed is, of course, not sufficient to render one guilty as an aider or abettor. There must be something to show that the person present and so charged, in some way procured, or incited, or encouraged, the act done by the actual perpetrator." *Id*. at 316; *see also id*. (referring to the "nonliability of a passive spectator"). Notwithstanding that rule, the court held that as a matter of the *sufficiency of the evidence*, the jury could have inferred Foster's active encouragement or participation from a number of circumstances. These included Foster's long-term residence in

9

the brothel,[4] as well as his statements about why he was there, which the jury could have concluded were false.[5]

*Spruill* is likewise distinguishable. Ms. Spruill was convicted of aiding and abetting forgery, "uttering," and petit

---

[4] The *Foster* opinion laid out a logical syllogism by which the jury, it said, could reasonably have inferred Foster's encouragement and participation in the scheme: "If he was paying board and room rent, he was contributing to its maintenance, and if he was given these accommodations free of charge, it must have been under a contract, express or implied, that he would keep quiet as to the character of the establishment." *Id.* at 316. The latter possibility — that Foster's "assurance of passivity" would render him an accomplice — is ingrained in the federal concept of aiding and abetting liability, too, even by Argueta's own acknowledgement. See Def. Br. 14-15 (discussing Professor LaFave's acknowledgment of the "assurance of passivity" as a basis for accomplice liability). In this regard, *Foster* is yet another example of Virginia's case law tracking, rather than exceeding, the traditional scope of accomplice liability.

[5] Foster said he traveled to the Virginia brothel from his home out of state for the purpose of persuading his wife (a brothel employee, apparently) to return home. But the opinion noted that Foster's room in the brothel included "a drawer packed with shirts, at least eight or ten of them freshly laundered, together with the average wardrobe of a man permanently located" — circumstances from which a "jury might have believed that his stay was not temporary and that he did not come merely to take his wife away." *Id.* at 315. It is axiomatic in the federal system, as elsewhere, that false exculpatory statements may be considered evidence of a defendant's consciousness of guilt. *See, e.g.*, 1 Leonard B. Sand, et al., *Modern Federal Jury Instructions* § 6.11 (2021); *United States v. Strother*, 49 F.3d 869, 877 (2d Cir. 1995) ("approv[ing] the language adopted by the district court," which said, "Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his or her innocence."); *United States v. Scheibel*, 870 F.2d 818, 822 (2d Cir. 1989) (although false exculpatory statements cannot provide the sole basis for a conviction, they are evidence of a consciousness of guilt, which can be considered with other evidence in determining guilt or innocence).

It is also worth noting that *Foster* was decided by the "Supreme Court of Appeals of Virginia" — a predecessor to the current court — under Virginia's previous constitution, which was superseded in 1971. Va. Const. art. 1, Declaration. It seems unlikely that the decision would be written the same way today, even if it does not support Argueta's motion as written. Anachronisms abound in the decision; it refers to the subject premises as a "house of ill fame," for example, and the opinion may be read to suggest (even if not explicitly) some outmoded notions regarding a husband's legal responsibility for the acts of his wife. Regardless, *Foster* does not fit the profile that Argueta ascribes to it.

larceny after she accompanied the principal to a Toys-R-Us store where the principal passed a counterfeit traveler's check. *Spruill*, 2002 WL 31655322, at *1-2.  On appeal, she too challenged the sufficiency of the evidence.  The appellate court began (once again) with the observation that Virginia "law is settled that mere presence is not sufficient to establish" aiding and abetting.  *Id.* at *3.  The court went on to uphold the conviction, noting evidence that the principal (Ms. Johnson) and Ms. Spruill were "standing together at the cash register" when the principal uttered the forged instrument (though Spruill disputed that); that the two were arrested together in a stolen car following the transaction; that $2,700 in "counterfeit traveler's checks were discovered in a pouch located on the back of the front passenger seat, *directly in front* of where Spruill was sitting immediately before the vehicle was stopped"; and that during the two weeks prior to the transaction in question, additional forged checks bearing the same serial number as the Toys-R-Us check had been passed in the town in which Ms. Spruill lived.  *Id.* at *1-3 (emphasis added).  As the *Foster* court had, the court held that a defendant's false-exculpatory statements counted as evidence of guilt: "Finding Spruill's testimony to be incredible, the trial judge may infer that she was attempting to conceal her guilt."  *Id.* at *4.

Accordingly, Virginia law does not apply in the way Argueta says it does. If it did, it would likely violate the principle "that the law does not punish criminal thoughts," absent an actus reus requirement. *See, e.g.*, *United States v. Shabani*, 513 U.S. 10, 16 (1994).

Moreover, the holdings of *Foster* and *Spruill* do not exceed the scope of federal accomplice law, which is itself extremely far-reaching. See *Rosemond v. United States*, 572 U.S. 65, 73 (2014) ("In proscribing aiding and abetting, Congress used language that comprehends all assistance rendered by words, acts, encouragement, support or presence . . . ."). Indeed, the only reference to an *actus reus* in *Rosemond* itself is the statement that Rosemond "actively participated in a drug transaction [by] accompanying two others to a site where money was to be exchanged for a pound of marijuana." *Id.* at 71-72. Rosemond was one of three people on the sales-side of the drug transaction. The Supreme Court's opinion acknowledges, however, the absence of proof that Rosemond held the drugs in question at any time, that he was tasked with receiving the money from the counterparty, or that he held or fired the gun at issue. *Id.* at 72.

Argueta's precise argument has been presented to the federal courts of Virginia — both the district court and the Fourth Circuit — and they have rejected it. Three cases from

12

the Eastern District of Virginia, all affirmed by the Fourth Circuit, have held that the Virginia's definition of aiding and abetting law is no broader than the federal definition. In *United States v. Garcia*, for example, the court held that "Virginia aiding and abetting law is not broader than the generic federal definition, an argument that this Court has already rejected." No. 3:19-CR-29, 2019 WL 4195345, at *7 (E.D. Va. Sept. 4, 2019), *aff'd sub nom. United States v. Lucas Garcia*, 831 F. App'x 90 (4th Cir. 2020). And in *United States v. Ward*, the court explained that "there is no case law to support that Virginia has a different standard of aiding-and-abetting liability than the federal standard. . . . Virginia's interpretation of accomplice liability is consistent with [the] formulation" under federal law. No. 3:18-CR-44, 2018 WL 9848286, at *4 n.3 (E.D. Va. Dec. 6, 2018), *aff'd*, 972 F.3d 364 (4th Cir. 2020) (citing *Thomas v. Commonwealth*, 688 S.E.2d 220, 234 (Va. 2010) (an aider and abettor must commit "some overt act done knowingly in furtherance of the commission of the crime" or "share[] in the criminal intent of the principal committing the crime," and an accomplice must "encourag[e], incit[e], or in some manner offer[] aid in the commission of the crime")).

Finally, in *United States v. Pritchett*, the district court rejected the defendant's argument that "Virginia accomplice liability can be found merely on a person's presence

13

at the scene of and acquiescence to a crime, while the generic definition requires an affirmative collaborative act." No. 17-CR-79, ECF No. 31, at 42:6-13. After comparing *Rosemund* with Virginia cases, the court concluded that:

> a close reading of the law of accomplice liability in the Commonwealth of Virginia demonstrates that it closely parallels federal law. Under both federal and state law, a defendant must be more than just personally present when a crime is committed. Both require knowing, encouragement, or abatement with shared criminal intent. A careful survey of Virginia law yields no case in which mere presence has been sufficient to support a criminal conviction.

*Id.* at 42:14-44:17. The Fourth Circuit affirmed. *United States v. Pritchett*, 733 F. App'x 128, 130 (4th Cir. 2018).

At bottom, Argueta is arguing that the Virginia state courts have misstated their own law of accomplice liability, and that the federal courts of Virginia — at two separate levels — have also misinterpreted Virginia law. For the reasons discussed above, however, Argueta has failed to establish that Virginia's robbery statute exceeds the bounds of its generic federal analogue. He therefore has not established that the Immigration Judge committed a fundamental procedural error.

2. Whether Argueta Suffered Prejudice

Even if I were to conclude that the Immigration Judge erred by labeling Argueta's robbery convictions "aggravated felonies," Argueta's Section 1326(d) challenge would still not succeed. This is because Argueta cannot establish that he was

prejudiced by the Immigration Judge's decision. *See Fernandez-Antonia*, 278 F.3d at 159 (to satisfy the third prong of Section 1326(d), defendant must show "must show both a fundamental procedural error and prejudice resulting from that error").

Prejudice in this context requires a "reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted . . . relief." *United States v. Sosa*, 387 F.3d 131, 138 (2d Cir. 2004). Here, as Argueta acknowledges, the Immigration Judge's decision was discretionary; thus, even if the Immigration Judge had found Argueta *eligible* for voluntary departure, the Immigration Judge would still have weighed several other factors in making his determination, including:

> the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; . . . [and] compensating elements such as long residence here, close family ties in the United States, or humanitarian needs.

*In re Arguelles-Campos*, 22 I & N Dec., 811, 817 (BIA 1999); *see also Patino v. Holder*, 520 F. App'x 18, 20 (2d Cir. 2013) (citing *Arguelles-Campos* for the proposition that an immigration judge "was well within its broad discretion" to refuse to grant voluntary departure relief).

At the time of removal, Argueta had two recent convictions for serious crimes. He was sentenced to 77 months'

15

imprisonment – later reduced to 45 months and five years' probation – and had completed his term of incarceration only two months prior to the hearing. Def.'s Ex. D, ECF No. 20-3, at 13, 18. Further, he had spent nearly half of his time in the United States in custody, and he claimed no meaningful humanitarian needs. Several Board of Immigration cases involving similar crimes suggest that the Immigration Judge would still have denied Argueta's request – even without the determination that they were aggravated felonies. *See, e.g.*, *In re: Eddy Rosario-Padilla*, 2017 WL 6555166, at *1-2 (BIA Oct. 13, 2017) (affirming denial of discretionary relief for noncitizen convicted of attempted robbery who served only six months' imprisonment and had steady employment and many family members in the United States); *In re: Nicolas Mejia Cruz*, 2011 WL 1570460, at *1-2 (BIA Apr. 6, 2011) (affirming denial of discretionary relief for noncitizen convicted of robbery despite his family and spouse in the United States); *In re: Adolfo Napoles-Campos*, 2007 WL 2299609 (BIA July 9, 2007) (noncitizen convicted of robbery denied discretionary relief).

Courts in this District have also held that the "reasonable probability" requirement was not satisfied in similar circumstances. *See, e.g.*, *United States v. Maldonado*, No. 18-CR-308 (E.D.N.Y. Feb. 11, 2019), ECF No. 50, at 18 (unpublished memorandum & order) ("Maldonado's recent conviction

16

for second-degree robbery and his subsequent re-sentencing to a ten-month incarceratory term would have been a high barrier to surmount in providing entitlement [to voluntary departure]."); *United States v. Jorquera*, No. 19-CR-479, 2021 WL 5232587, at *11 (E.D.N.Y. Nov. 10, 2021) (finding that there was no reasonable probability the defendant would have been granted voluntary departure given his "significant criminal history").

Argueta thus cannot carry his burden to establish that there is a reasonable probability he would have received discretionary relief. Because Argueta fails to meet the third prong under Section 1326(d), he cannot collaterally attack his removal order. Therefore, I need not address his ability to meet the other two prongs.

**B. Jurisdiction of the Immigration Judge**

Argueta also moves to dismiss the indictment on a second (and independent) basis: the Immigration Judge lacked jurisdiction to order his removal because the notice of his deportation hearing failed to set forth the date and time, in violation of 8 U.S.C. § 1229(a)(1)(G)(i).

Jurisdiction vests when a "charging document" – defined to include an NTA – is filed by the INS with the Immigration Court. 8 C.F.R. § 1003.13-14(a). In removal proceedings under the INA, an NTA should include "the time, place and date of the initial removal hearing, where

17

practicable." 8 C.F.R. § 1003.18(b). If the time and place of the removal hearing are not provided in the NTA, the Immigration Court will be responsible for providing such notice to the government and the noncitizen. *Id.* If an NTA omits the time and place of an initial hearing, jurisdiction nevertheless vests in the Immigration Court if the noncitizen is subsequently informed of the time and location of the hearing. *Banegas Gomez v. Barr*, 922 F.3d 101, 112 (2d Cir. 2019), *cert. denied sub. nom. Gomez v. Barr*, 140 S. Ct. 954 (2020).

Here, Argueta's NTA included the address where the charging document was filed and the location of the removal hearing. Def.'s Ex. F, ECF No. 20-3, at 25-26. A subsequent Hearing Notice contained the date and time of the hearing. Government's Ex. A at 2, ECF No. 21-1. Argueta does not dispute that he received notice of the hearing – nor could he, because he appeared at the hearing. Def. Br. 6-7 (acknowledging that Argueta appeared at the hearing by video); *see also* Def.'s Ex. H. at 0:35, ECF No. 20-3. Under recent Second Circuit precedent, this fact is fatal to Argueta's argument; in *Chery v. Garland*, the Court of Appeals held that where an NTA does not specify the time and place of a removal hearing, the Immigration Court's jurisdiction is unaffected so long as the defendant "does not dispute that he received notice of the hearing at which he appeared." 16 F.4th 980, 987 (2d Cir. 2021). Argueta

18

thus fails to show that his NTA had the effect of voiding jurisdiction.

## IV.  Conclusion

For these reasons, Argueta's motion to dismiss the indictment is DENIED.

SO ORDERED.

　　　　　　　　　　　　　　　　/s/ Eric Komitee
　　　　　　　　　　　　　　　　ERIC KOMITEE
　　　　　　　　　　　　　　　　United States District Judge

Dated:    April 25, 2022
         Brooklyn, New York